Michael S. Adler
COHEN, WEISS AND SIMON LLP
900 Third Avenue
Suite 2100
New York, NY 10022-4869
212-563-4100
madler@cwsny.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
-------------------------------------------------------------- x
                 :
PRODUCTION SERVICE & SALES DISTRICT :
COUNCIL PENSION FUND and ITS TRUSTEE, :
                 : Civil Action No.
           Plaintiffs, :
                 :
           vs. :
                 : DOCUMENT
DAYSOL, INC. d/b/a DISPLAY PRO : ELECTRONICALLY FILED
MANUFACTURING and JOHN DOE :
COMPANIES 1-99, :
           Defendants. :
-------------------------------------------------------------- x

## COMPLAINT

        Plaintiffs, the Production Service & Sales District Council Pension Fund (the "Plan") and its Trustee (the "Trustee"), by and through their attorneys, Cohen, Weiss and Simon LLP, allege as follows:

### INTRODUCTION

        1.    This is an action by an employee benefit plan and its fiduciary against Daysol, Inc. ("Daysol") d/b/a Display Pro Manufacturing ("Display Pro") (collectively and individually, the "Employer") and John Doe Companies 1-99 to collect withdrawal liability and statutory damages pursuant to Sections 502, 515, and 4301 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132, 1145, and 1451.

**JURISDICTION AND VENUE**

2. The Court has jurisdiction over this action pursuant to Sections 502(a)(3), 502(e)(1), 502(f), 502(g), 515, and 4301(a), (b) and (c) of ERISA, 29 U.S.C. §§ 1132(a)(3), 1132(e)(1), 1132(f), 1132(g), 1145, and 1451(a), (b), and (c), and 28 U.S.C. § 1331.

3. Venue lies in this district under Sections 502(e)(2) and 4301(d) of ERISA, 29 U.S.C. §§1132(e)(2) and 1451(d), as at least one of the defendants has its principal place of business in this district.

**THE PARTIES**

4. The Plan is a "multiemployer benefit plan" within the meaning of 29 USC §§ 1002(3), (37)(A) and 1145, and a labor-management "employee benefit trust fund" within the meaning of 29 USC § 186(c)(5). The Plan is a "multiemployer defined benefit employee pension benefit plan" maintained for the purpose of providing retirement and related benefits to eligible participants and beneficiaries within the meaning of 29 USC § 1002(2)(A), (3), (35) and (37)(A) and 29 USC § 1301(a)(3).

5. The Plan is currently administered by I E Shaffer & Co. (the "Third Party Administrator"), 830 Bear Tavern Road, PO Box 1028, West Trenton NJ 08628.

6. The Trustee is a "fiduciary" with respect to, and collectively the "administrator" and "plan sponsor" of, the Plan under 29 USC § 1002(16)(A) and (B) and (21)(A).

7. Pursuant to Sections 502(a)(3) and 4301(a)(1) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1451(a)(1), the Trustee is authorized to bring this action on behalf of the Plan, and its participants and beneficiaries.

8. The Plan was terminated by mass withdrawal of all its Contributing Employers on December 31, 2001.

9. The Plan became insolvent and currently receives all of its funding from the Pension Benefit Guaranty Corporation ("PBGC"), a federal government agency, under ERISA.

10. Display Pro is a New Jersey unincorporated business owned by Daysol.

11. The New Jersey Secretary of State lists Display Pro as an alternative name for Daysol.

12. Daysol is a New Jersey corporation.

13. Display Pro's and Daysol's principal place of business is 40 Boright Avenue, Kenilworth, New Jersey 07033.

14. The Employer, collectively and individually, constitute an "employer" within the meaning of 29 USC § 1002(5) and 1145.

15. Display Pro and Daysol are under common control, members of a "controlled group" and/or are a single employer with the Employer within the meaning of 29 USC § 1002(37)(B), 29 USC § 1301(b)(1), 26 USC § 267(f), 26 USC § 1563, and applicable PBGC and Treasury Regulations.

**THE EMPLOYER'S WITHDRAWAL FROM THE FUND**

16. Until December 31, 2001, the Employer was obligated to remit contributions to the Plan.

17. On or about December 31, 2001, the Employer, along with all other Contributing Employers to the Plan, ceased to have an obligation to contribute to the Plan and completely withdrew from the Plan under 29 USC § 1381(a) and (b)(2), 29 USC § 1383(a)(1) and (b)(2)(A).

18. As a result of its complete withdrawal, the Employer is obligated to pay withdrawal liability to the Plan. This liability was determined and assessed by the Plan.

19. On or about December 6, 2001, the Employer executed an Agreement for Settlement of Mass Withdrawal Liability and Contribution Liability (the "Agreement") with the Plan.

20. Under the Agreement, the Employer is required to make quarterly payments to the Plan in the amount of $1,940.00 each quarter.

21. 29 USC Section 1399(c)(5) provides: "In the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the date of the first payment which was not timely made."

22. Section 3.1.1 of the Agreement provides:

> An Undersigned Employer that defaults under this Agreement is liable for the mass withdrawal it would have incurred under sections 4211 [29 USC Section 1391] and 4219 [29 USC Section 1399] (c)(1)(D) determined as of the Mass Withdrawal Date. Such an employer shall be required to make quarterly payments in an amount determined under section 4219(c)(1)(C)(I) of ERISA as of the Mass Withdrawal Date, with any difference between payments made prior to the default under this Agreement and payments required under section 4219(c)(1)(C)(I) of ERISA to be paid or credited in a lump sum, with interest as provided in section 4219(c)(5) of ERISA, within 60 days after the date of default.

23. The Employer has failed to make the last three (3) quarterly installment payments to the Plan, totaling $5,820.00.

24. By letter dated February 8, 2019, the Third Party Administrator of the Plan gave written notification under 29 USC § 1399(c)(5) that the Employer failed to make its withdrawal liability payment when due and that if the failure was not cured within 60 days the Employer would be in default.

25. By letter dated February 13, 2019, the Trustee of the Plan gave written notification under 29 USC § 1399(c)(5) that the Employer failed to make its withdrawal liability

payment when due and that if the failure was not cured within 60 days the Employer would be in default.

26. The Employer did not make its payments or cure its default within 60 days after receipt of notices within the meaning of 29 USC § 1399(c)(5).

27. By letter dated July 9, 2019, the Third Party Administrator of the Plan notified the Employer of its uncured default and demanded payment of the full amount due.

28. The failure of the Employer to make when due its withdrawal liability payments and the failure to cure such delinquency constitutes a default as a result of which the Employer is required to pay the full outstanding amount of its withdrawal liability, together with interest from the due date of the first payment that was not made, under 29 USC § 1399(c)(5).

29. The outstanding amount of the Employer's withdrawal liability is $158,332.00 or a present value under the Agreement of $63,327.00, plus accrued interest, liquidated damages, and attorney's fees and costs.

## THE CONTROLLED GROUP/SINGLE-EMPLOYER

30. Section 4001(b)(1) of ERISA provides that "all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer."  29 U.S.C. § 1301(b)(1).

31. In determining whether entities are considered to be under "common control," ERISA uses the definition of "controlled group" found in the Internal Revenue Code. 29 U.S.C. § 1301(b)(1).

32. The regulations issued under the Internal Revenue Code define "members of a controlled group" as "two or more corporations connected through stock ownership...." 26 C.F.R. § 1.414(b)-(1).  These regulations describe three different types of controlled groups:  a

"parent-subsidiary group," a "brother-sister group," or a "combined group."  26 U.S.C. § 1563(a); 26 C.F.R. § 1.414(c)-2.

33. All three types of controlled groups require that the companies be connected through a "controlling interest."  *See* 26 U.S.C. § 1563(a)(1) and 26 C.F.R. §1.414(c)-2(b)(1) (parent-subsidiary group); 26 U.S.C. § 1563(a)(2) and 26 C.F.R. § 1.414(c)-2(c)(1) (brother-sister group); 26 U.S.C. § 1563(a)(2) and 26 C.F.R. § 1.414(c)-2(d) (combined group).

34. As Daysol owns and controls Display Pro, and/or has the common ownership specifically required for controlled group and/or single employer liability, Daysol and Display Pro are under one controlled group and/or are a single employer, and are jointly and severally liable for the amounts due hereunder.

35. Upon information and belief, John Pillarella has owned and/or controlled actual and voting stock of the Employer.

36. Upon information and belief, John Pillarella has signed checks to the Plan on behalf of the Employer.

37. Upon information and belief, John Pillarella has owned and/or controlled actual and/or voting stock of at least one other company, Unified Resources, which operates out of the same location as the Employer.

38. Unified Resources has remitted at least one (1) withdrawal liability payment on behalf of the Employer, signed by John Pillarella.

39. At this time, it is unclear whether Unified Resources is within the Employer's controlled group and/or is a single employer with the Employer.

40. Accordingly, defendants John Doe Companies 1-99 are fictitious defendants representing any other trade or business under common control with the Employer.

## CAUSE OF ACTION

41. As a result of the Employer's complete withdrawal from the Plan, the Employer became liable to the Plan for withdrawal liability, pursuant to Section 4201 of ERISA, 29 U.S.C. § 1381.

42. By reason of their failure to make withdrawal liability payments, their controlled group and/or single employer status, the Employer and John Doe Companies 1-99 are in default within the meaning of ERISA Section 4219(c)(5)(A), 29 U.S.C. § 1399(c)(5)(A), and the Plan is entitled to immediate payment of the total amount of the withdrawal liability remaining due, plus accrued interest, liquidated damages, and attorney's fees and costs pursuant to ERISA Sections 502(g)(2)(A), 502(g)(2)(B), 502(g)(2)(C), 502(g)(2)(D), and 4301(b), 29 U.S.C. §§ 1132(g)(2)(A), 1132(g)(2)(B), 1132(g)(2)(C), 1132(g)(2)(D), and 1451(b).

## STATUTORY SERVICE

43. A copy of this Complaint has been served by certified mail - return receipt requested upon the PBGC in accordance with 29 USC § 1451(g).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court enter judgment against the Defendants, jointly and severally, as follows:

1. Declaring that Defendants are members of a single controlled group and/or are single employer entities with one another;

2. Ordering the Employer to identify all members of its controlled group;

3. Ordering the Defendants, jointly and severally, to pay the Plan:

    (a) unpaid withdrawal liability pursuant to ERISA Sections 502(g)(2)(A), and 4301(b), 29 U.S.C. §§ 1132(g)(2)(A), and 1451(b);

    (b)    interest on the unpaid withdrawal liability pursuant to ERISA Sections 502(g)(2)(B), and 4301(b), 29 U.S.C. §§ 1132(g)(2)(B), and 1451(b);

    (c)    an amount equal to the greater of (a) interest or (b) an amount not to exceed twenty percent of the withdrawal liability pursuant to ERISA Sections 502(g)(2)(C) and 4301(b), 29 U.S.C. §§ 1132(g)(2)(C), and 1451(b); and

    (d)    the reasonable attorney's fees and costs of this action pursuant to ERISA Sections 502(g)(2)(D) and 4301(b), 29 U.S.C. §§ 1132(g)(2)(D) and 1451(b); and

4. Granting such other and further relief as the Court deems appropriate.

Dated: New York, New York  
       July 9, 2019

By   */s/ Michael S. Adler*  
Michael S. Adler  
COHEN, WEISS AND SIMON LLP  
900 Third Avenue, 21st Floor  
New York, NY 10022-4869  
212-563-4100

Counsel for Plaintiffs